**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

GLORIA J. CARTER,

    Plaintiff,

v.                                                        Case No: 8:13-cv-2337-T-30AEP

PATRICK R. DONAHOE and U.S.
POSTAL SERVICE,

    Defendants.

## ORDER

THIS CAUSE comes before the Court upon the Defendant's Motion for Summary Judgment (Dkt. #16) and Plaintiff's Memorandum in Opposition (Dkt. #23). Upon review and consideration, it is the Court's conclusion that the Motion should be granted.

*Background*

Plaintiff, Gloria J. Carter, brings this action against Defendant, Patrick R. Donahoe, as Post Master General of the United States Postal Service ("the Postal Service") alleging retaliation under Title VII. Carter was employed by the Postal Service for 22 years and held several positions throughout her tenure. The Postal Service terminated Carter's employment on December 31, 2011.

Carter's last position was a Sales, Service and Distribution Associate at the Lakeland, Florida Post Office. As part of her job duties, Carter regularly worked at the customer service windows assisting customers with routine postal services. She also

regularly distributed "marriage mail" which consisted of advertisements distributed to customers on a weekly basis. The marriage mail arrived to the Lakeland facility in bundles wrapped in nylon bands, each weighing between fifteen and twenty pounds. Sixty bundles are placed on a "pallet" and each mail carrier receives about ten pallets to distribute on their mail routes. The person distributing the marriage mail is supposed to use a "pallet jack" to distribute the mail. The Postal Service concluded that Carter's failure to use a pallet jack as instructed on several occasions, her unprofessional conduct in front of customers, and her general refusal to follow instructions and cease her inappropriate conduct justified its decisions to discipline Carter and terminate her employment.

## I.   Carter's Equal Employment Opportunity Charges

In 2007, Carter filed her first of many Equal Employment Opportunity ("EEO") charges alleging discrimination based on race and age. At the time she filed the charge, Carter was a post office box clerk. She was notified that she would lose that position, but not her employment, as a result of departmental changes.  In anticipation of that change, Carter pre-emptively filed the EEO charge. She settled the matter with the Postal Service. In November 2010, Carter filed her second formal EEO charge alleging discrimination based on race and religion after receiving a seven-day suspension in August 2010. The Postal Service issued a Final Agency Decision on June 17, 2011, which concluded that Carter did not produce sufficient evidence of discrimination.

In January 2012, Carter filed her third formal EEO charge alleging retaliation based on her prior EEO charges, both formal and informal.[1] Carter listed the following three employment actions as retaliatory: on September 3, 2011, Associate Supervisor for Customer Services Wayne McDonald put Carter on "Emergency Placement Off-Duty Status;" on October 3, 2011, Post Master John Rhoden denied Carter a five minute "wash-up period;" and on November 17, 2011, Supervisor for Customer Services Maritza Cintron issued a Notice of Removal to Carter, which the Manager of Customer Services Sprague Baerhold co-signed.

## II.  The Alleged Retaliatory Employment Actions

### a. Emergency Placement

On September 3, 2011, McDonald instructed Carter to distribute marriage mail in the delivery section. McDonald noticed that Carter was distributing the mail in an unsafe and inefficient manner by carrying the bundles instead of using the pallet jack in a way consistent with her training. When McDonald inquired, Carter apparently began chanting, clapping her hands, and speaking in a different language. She did not answer McDonald's questions and was otherwise disruptive. McDonald put her on Emergency Placement which made her an off-duty employee (without pay) and required her to leave the premises.

---

[1] Carter filed two informal EEO charges in 2010. In the first charge she alleged harassment and racial discrimination based on an incident where she felt threatened by a male supervisor, she settled the matter without filing a formal charge. In the second charge she alleged disparate treatment based on race and religion which resulted in the formal EEO charge filed in November 2010.

3

The Postal Service notified Carter on September 7, 2011, that she was suspended for fourteen days.

### b. Wash-up Period

On October 3, 2011, Carter was again working with marriage mail. She spoke to Rhoden and asked about the start of her meal break. Rhoden told her that her meal break began immediately and instructed her to clock out. Carter requested a five minute wash-up period, displaying her latex gloves to Rhoden. She also indicated that she needed to use the restroom. Rhoden denied the five minute wash-up period, and told her to clock out and then she could use the restroom. Carter bypassed the closest time clock and ladies restroom, went to another time clock and then went to the restroom. Carter asserts that as a result of being denied her wash-up period, she urinated on herself and was humiliated.

### c. Notice of Removal

On November 17, 2011, Cintron issued a Notice of Removal indicating that the Postal Service decided to terminate Carter's employment due to her consistent failure to follow instructions and improper conduct. Specifically, the Notice of Removal indicated that although Carter received training on the use of the pallet jack when distributing marriage mail, on October 3, 2011, she did not follow the training and instructions given and did not properly stage the mail. Her actions were unsafe and inefficient. Further on October 6, 2011, McDonald instructed her to open a second window unit to service customers and she argued with him regarding the need to open the window in front of customers, refused to sign a standard form regarding her pay despite several requests from

4

McDonald, ignored him and called him "boy" in a derogatory manner, and incorrectly conducted her duties in the delivery section.

The Notice of Removal further indicated that on October 24, 2011, Carter once again used improper technique in spreading marriage mail, and although McDonald specifically instructed her to use the correct procedure, she ignored him which wasted time and created a safety hazard. Cintron also considered Carter's prior negative evaluations in her decision to terminate her including two letters of warning and two prior suspensions, all of which were for improper conduct or failure to follow instructions or both. Baerhold co-signed the Notice of Removal, and states that in doing so he only reviewed whether Cintron followed the proper procedures in issuing the Notice of Removal; he had no direct supervision over Carter.

On May 24, 2013, the Postal Service issued a Final Agency Decision on Carter's third formal EEO charge and concluded that Carter did not demonstrate that the employment actions were in retaliation for her prior EEO charges. On September 6, 2013, Carter filed this lawsuit.

*Discussion*

    **I.   Legal Standard**

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The existence of some factual disputes

between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id*. Throughout this analysis, the Court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id*. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248–49 (1986).

## II. Retaliation under Title VII

Title VII prohibits retaliation against an employee for opposing a discriminatory employment practice or for participating in an investigation or proceeding concerning employment discrimination. 42 U.S.C. § 2000e-3(a). Where there is no direct evidence of retaliation, as in this case, the Court utilizes the *McDonnell Douglas* burden-shifting framework to analyze an employee's retaliation claim. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010) (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802-04 (1973)). Under this framework, the employee must first establish a prima facie case of retaliation by showing that: (1) she engaged in statutorily protected activity, (2) she

suffered a materially adverse action, and (3) there is a causal relationship between the two. *See id*. The employer then has the opportunity to articulate a non-retaliatory reason for its action, which can be rebutted with evidence of pretext. *Id*. at 1181-82. *See also Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001).

To satisfy the causal connection requirement of a prima facie case, the Supreme Court clarified that a Title VII plaintiff must demonstrate "but-for" causation to sustain a retaliation claim. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ––– U.S. –––, –––, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013); *see also Smith v. City of Fort Pierce, Fla.*, 565 F. App'x 774, 778 (11th Cir. 2014) (applying the *Nassar* 'but-for' causation standard to claims of retaliation under Title VII and the FCRA).  Carter can establish causation either by showing "very close" temporal proximity or presenting other evidence suggesting a causal link between her protected activity and the Postal Service's adverse actions. *See Baroudi v. Sec'y, U.S. Dept. of Veterans Affairs*, 13-14477, 2015 WL 1475586, at *3 (11th Cir. Apr. 2, 2015) (citing *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)). However, "[t]emporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision-maker did not have knowledge that the employee engaged in protected conduct." *Walton–Horton v. Hyundai of Ala.*, 402 F. App'x. 405, 409 (11th Cir. 2010) (quoting *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)).

The Eleventh Circuit has held that a delay of three to four months is too long, as a matter of law, to establish causation by temporal proximity. *Thomas,* 506 F.3d at 1364; *see also Faircloth v. Herkel Invs. Inc.*, 514 F. App'x 848, 852 (11th Cir. 2013) (no inference of

causation based on three-month gap). However, such a delay is not fatal where the plaintiff presents "other evidence tending to show causation." *Thomas,* 506 F.3d at 1364; *see also Wascura v. City of S. Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001) (emphasizing that the plaintiff had introduced "virtually no evidence of a causal connection" aside from temporal proximity).

The "other evidence" suggesting a causal link may include a series of adverse actions that began immediately after a plaintiff engaged in protected activity. *See Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998). However, the intervening retaliatory acts must be material, or significant, to suggest a causal link. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006) ("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm . . . . We speak of material adversity because we believe it is important to separate significant from trivial harms."). Additionally, a pattern of antagonism coupled with timing can establish a causal link. *Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1405 (S.D. Fla. 2014) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

### a. Carter's Prima Facie Case

Carter sufficiently demonstrates that she engaged in statutorily protected activity when she filed her prior EEO charges against the Postal Service. The Postal Service, for purposes of this Motion only, does not dispute that the Emergency Placement and the Notice of Removal are adverse employment actions. However, it does argue that the denial of the wash-up period is not an adverse employment action.

8

The Court concludes that Rhoden's denial of the wash-up period was not sufficiently material to constitute an adverse action. For an action to be "adverse" in the retaliation context, it "must be harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 57. To rise to the level of an actionable Title VII claim, employment decisions must work a material alteration on the terms of employment, as opposed to being merely petty slights or trivial annoyances. *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001). The denial of the wash-up period did not "impact the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way." *Id*. at 1239. While the Court can certainly see that a reasonable person could find the urination incident embarrassing, Carter has not presented evidence sufficient for a reasonable factfinder to determine that the denial of the wash-up period was a serious and material alteration to the terms of her employment.

Carter's subjective view of the action's effect is not dispositive; rather, the action must also be "materially adverse as viewed by a reasonable person under the circumstances." *Davis,* 245 F.3d at 1239. *See also Gray v. City of Jacksonville, Fla.*, 492 F. App'x. 1, 8-9 (11th Cir. 2012) *cert. denied*, 134 S. Ct. 84 (U.S. 2013) ("the employee's subjective view of the adversity accompanying a particular action is not dispositive or even necessarily probative."); *Webb–Edwards v. Orange Cnty. Sheriff's Office*, 525 F.3d 1013, 1031 (11th Cir. 2008) ("not all conduct by an employer negatively affecting an employee constitutes adverse employment action.").

Many courts have held that denial of a break period is not sufficiently material to constitute an adverse action. *See, e.g. Grimsley v. Marshalls of MA, Inc.*, 284 F. App'x 604,

9

609 (11th Cir. 2008) (employee did not suffer adverse employment action when supervisor increased workload, assigned him additional tasks and denied him breaks while allowing employees outside of protected class to take breaks); *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 486 (5th Cir. 2008) (holding that having some break requests denied by a supervisor in the context of an entry-level retail job "amount to nothing more than the 'petty slights' or 'minor annoyances' that all employees face from time to time.") (citing *White*, 548 U.S. at 68, 126 S.Ct. 2405).

To ultimately establish a prima facie case of her retaliation claim, Carter must put forth sufficient evidence of causation. Carter argues that temporal proximity along with a pattern of ongoing antagonism satisfies her burden. She also argues that the supervisors all had knowledge of her prior EEO charges at the time they engaged in their respective adverse employment actions.

Ten months, the time between Carter's second formal EEO charge in November 2010, and the first adverse employment action in September 2011, is too distant to support temporal proximity. The temporal connection between the protected activity and the adverse employment action alone is insufficient to establish a showing of causal connection. *See Thomas*, 506 F.3d at 1364.

Carter argues that she suffered "ongoing hostility" which establishes a "chain of intervening retaliatory acts" including nitpicking about her uniform and closely monitoring her distribution of marriage mail. However, these actions are also insufficiently material to be adverse employment actions that support causation. *See Baroudi*, 2015 WL 1475586, at *4 (retaliatory acts cited by plaintiff, including speaking to her in a rude manner, ordering

her to choose between two offices, ignoring her emails and general rudeness were not sufficiently material to suggest a causal link.)

McDonald's and Cintron's criticisms of Carter's marriage mail distribution do not suggest a causal link since Carter received prior written warnings about her work and misconduct on November 25, 2009, and February 18, 2010. *See Forbes v. City of North Miami*, No. 11–21200–CIV, 2012 WL 1135820, *12 (S.D. Fla. Apr. 4, 2012) ("A critical review of an employee's work product in and of itself would not deter a reasonable employee from making or supporting a charge of discrimination. On the contrary, a reasonable employee who received numerous warnings about his work product may be more inclined to expect such a review.").

Carter asserts that Rhoden, McDonald, and Cintron all had knowledge of her prior EEO charges. She claims she told Rhoden sometime in 2008 about her 2007 EEO charge; she told McDonald on September 7, 2011, about her 2010 EEO charge, and she argues that Cintron has knowledge of her prior EEO charges because she works in management. All three supervisors disavow any knowledge of Carter's prior EEO charges at the time they made their employment decisions.

The Court need not resolve this dispute because Rhoden's employment action is insufficiently material to be adverse, and Carter admits that she told McDonald after he put her on Emergency Placement. As to Cintron, Carter argues that supervisors and managers are privy to certain information that circulates in the department based on a vague notion of "government practices, postal practices, and protocol" and that a jury could simply make that inference without any corroborating evidence. The Court rejects that argument and

11

will not impute knowledge of the prior EEO charges on supervisors based merely on Carter's subjective belief that those in management generally discuss these matters. Even if Carter could demonstrate Cintron's knowledge of her prior EEO charge, she is unable to rebut the Postal Service's legitimate non-retaliatory reasons as pretext.

### b. The Postal Service's Legitimate Non-Retaliatory Reasons

Once a plaintiff establishes a prima facie case, the employer then has the burden to articulate a legitimate, non-retaliatory reason for the challenged employment action. *Pennington*, 261 F.3d at 1266. The plaintiff then has the ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct. *Id*.

The Postal Service articulates a legitimate non-retaliatory reason for all of its employment actions against Carter. McDonald put Carter on Emergency Placement because she would not follow instructions and worked in an inefficient and unsafe manner. He was concerned for her safety and the safety of the other employees when she ignored his instructions to use the pallet jack. Rhoden testifies that wash-up periods are permitted for employees who touch hazardous material or "dirty mail" and those who work under the Plant Manager; Carter did neither. Cintron terminated Carter after repeated incidents where she did not follow instructions or conduct her work in a manner consistent with her training. She was also very disrespectful to her supervisors, and made inappropriate statements in front of customers. Combined with her prior written warnings and suspensions, the 2011 incidents supported her decision to terminate Carter.

### c. Pretext

Generally, to establish pretext, a plaintiff may demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *McCann v. Tillman,* 526 F.3d 1370, 1375-76 (11th Cir. 2008). However, in the retaliation context, Carter bears the ultimate burden of proving by a preponderance of the evidence "that the legitimate reasons offered by the employer for taking the adverse action were pretexts for unlawful retaliation, and that the plaintiff's protected activity was the 'but-for' cause of the adverse action." *Mealing v. Georgia Dept. of Juvenile Justice,* 564 F. App'x. 421, 427 (11th Cir. 2014) *cert. denied*, 135 S. Ct. 1165 (2015) (internal citations omitted). Specifically, Carter must demonstrate that the reasons are false and retaliation was the real reason for the employment decisions. *Id.*

Carter's arguments aimed at overcoming the Postal Service's legitimate non-retaliatory reasons are insufficient. She argues that timing of the events suggest retaliation. The Postal Service issued the Final Agency Decision for the November 2010 EEO charge against Vivian Hall (Carter's supervisor prior to McDonald) in June 2011 which gave her a 90-day window to file a lawsuit. McDonald replaced Hall in July 2011. Rhoden returned to the Lakeland facility as Post Master in April 2011. Thereafter, from September 3, 2011, through November 7, 2011, she argues that she was "placed under a microscope" and repeatedly accused of failing to follow instructions regarding marriage mail. Carter also generally disputes that she engaged in improper conduct or refused to follow instructions,

13

and believes that she was a high performing employee, and therefore argues the proffered reasons are false.

To the extent that Carter relies on "increased scrutiny" of her work after the EEO charges as evidence of pretext, these assertions are insufficient. In *Weaver v. Casa Gallardo, Inc*., 922 F.2d 1515, 1524–25 (11th Cir. 1991) *superseded by statute on other grounds as recognized in Munoz v. Oceanside Resorts, Inc*., 223 F.3d 1340, 1347 (11th Cir. 2000), on which Carter partially relies, the Eleventh Circuit recognized that increased scrutiny of one's work after an EEO charge can constitute evidence of intent to retaliate. In *Weaver*, "intensive monitoring" of the plaintiff's performance was instituted, "in which at least one management employee was assigned to keep track of [the employee's] work schedule and expense reports and regularly write memos to his personnel file." 922 F.2d at 1525. Carter's evidence of increased scrutiny falls far short of that which took place in *Weaver*.

Further, Carter's own evaluation of her qualifications do not support a finding of pretext. *Standard v. A.B.E.L. Servs., Inc*., 161 F.3d 1318, 1332–33 (11th Cir. 1998). *See also Hollifield v. Reno*, 115 F. 3d 1555, 1565 (11th Cir. 1997) (plaintiff's own perception of performance is insufficient to survive summary judgment). To the extent that Carter relies on previous satisfactory ratings under other supervisors, as she suggests in her deposition, " 'differences in the evaluation of [a plaintiff's] performance do not establish a genuine issue on pretext. Different supervisors may insist upon different standards of behavior, and a new supervisor may decide to enforce policies that a previous supervisor

14

did not consider important'." *McCann*, 526 F.3d at 1377 (quoting *Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002)).

In her Memorandum in Opposition, Carter generally contests the Postal Service's characterization of her work, and makes a blanket denial that she engaged in improper conduct or failed to follow instructions, but she does not rebut the specific incidents referenced in the Emergency Placement or Notice of Removal. *See Joseph v. Columbus Bank and Trust Co.*, 447 F. App'x. 110, 112 (11th Cir. 2011) ("Ultimately, an employee must meet the employer's stated reason 'head on and rebut it' and [she] cannot succeed by simply quarreling with the wisdom of that reason.") (quoting *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010)).

Generally speaking, Carter routinely states in her deposition that she was harassed and targeted for poor treatment, but consistently responded "I don't know" and "I don't remember" to many of the questions requesting specific details.[2] Carter's testimony is wholly insufficient to support pretext, particularly in light of her burden to put forth evidence demonstrating that the adverse employment actions would not have occurred "but-for" her EEO charges as set forth in *Nassar*.

## *Conclusion*

Ultimately, Carter cannot establish that her protected activity was the "but-for" cause of her discipline and termination because the Postal Service has proffered legitimate,

---

[2] The Court notes that the Notice of Removal and Final Agency Decision also described Carter as being non-responsive during investigative interviews, frequently stating "I don't know" and "I don't remember" when asked to describe specific events and incidents.

non-retaliatory reasons for its adverse employment actions - Carter's failure to follow instructions and her misconduct. Carter has not rebutted these proffered reasons with sufficient evidence demonstrating that the Postal Service acted with retaliatory intent. Accordingly, Carter's retaliation claim fails as a matter of law. The Court need not address the remaining issues regarding the timeliness of Carter's lawsuit.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant's Motion for Summary Judgment (Dkt. #16) is GRANTED.

2. The Clerk of Court is directed to enter judgment in favor of the Defendant.

3. All pending motions are denied as moot and the Clerk of Court is directed to close this case.

**DONE** and **ORDERED** in Tampa, Florida, this 30th day of April, 2015.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>Copies furnished to</u>:
Counsel/Parties of Record

S:\Odd\2013\13-cv-2337 msj 16.docx